Karl F. ABERCROMBIE, Appellant,

v.

The STATE of Texas, Appellee.

Dennis G. DEAN, Appellant,

v.

STATE of Texas, Appellee.

Nos. 48334, 48335.

Court of Criminal Appeals of Texas.

July 24, 1974.

Rehearing Denied Nov. 5, 1975.

Opinion in Rehearing Oct. 15, 1975.

**580**

Joe Slator Petsch, Del Rio, for Abercrombie.

Arturo C. Gonzalez, Del Rio, for Dean.

John F. Pettit, Dist. Atty., Edwin E. Springer, Asst. Dist. Atty., Del Rio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeals are taken from convictions for possession of marihuana. After verdicts of guilty were returned by the jury, punishment was assessed at seven years for appellant Dean and three years for appellant Abercrombie.

Appellants contend that "the search warrant issued by the magistrate was not based upon probable cause because the reliability, if any, of the undisclosed informant was not established in the affidavit."

The record reflects that officers, armed with a search warrant, conducted a search in a residence located at 208½ East Broadway Street in Del Rio on November 25, 1972. Approximately one pound of marihuana was found in the four-room dwelling. In addition, a quantity of marihuana was found in a commode in the bathroom. Officer Gardner testified he saw Abercrombie run in the bathroom with something in his hand and reappear seconds later with his hands empty. Evidence of marihuana was found throughout the dwelling. Particles of marihuana were found in clothing and various containers and vessels. Abercrombie and one Jerry Wayne Davis were present in the apartment when the search was conducted. Dean, a lessee of the residence, was arrested shortly thereafter while driving a vehicle belonging to Abercrombie.

A hearing was held on appellants' motion to suppress evidence seized in the search and the court's action in overruling same gives rise to appellants' contention.

Appellants urge that the allegations of the affidavit made to support the search warrant are insufficient to meet the second prong of the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, requiring that the affidavit state circumstances from which it may be determined that the unnamed informer was credible and reliable.

The pertinent portion of the affidavit of Officer Gardner reads:

"MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

"A reliable and credible person, hereinafter sometimes called informant, the identity of such reliable and credible person and such informant I wish not to disclose, has stated to me on this date 25 November 1972, he found two plastic bags of green plant substance believed by him to be marijuana in his yard adjacent to 208½ East Broadway at approximately 3:00 AM 24 November 1972. He kept the two plastic bags of green plant substance in his possession until approximately 9:00 AM the same date and at which time he went to 208½ East Broadway and asked one white male approximately 20 to 25 years of age, tall and heavy build and having dark hair and a dark bushy beard, later identified by a photograph as a suspected narcotic user being one Dennis G. Dean. At such time the informant asked the said Dennis G. Dean if he had lost something and Dean's reply was yes. The dogs found it and drug (sic) it out into the yard and at this time the informant returned the two plastic bags of

green plant substance to the said Dennis G. Dean and he did then and there carry the two plastic bags of green plant substance into the house at 208½ East Broadway. The informant states that in the past he had handled and smoked marijuana and he further states the contents of the two plastic bags to be of the same substance that he handled and smoked in the past being marijuana. It is believed at this time the green plant substance is concealed in the house at 208½ East Broadway Street."

The State cites *Adair v. State*, 482 S.W.2d 247, Tex.Cr.App. for the proposition that an allegation of prior reliability is not necessary if the underlying circumstances reflect reliability. See *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 73. It should be noted, however, that the affidavit in *Adair v. State*, supra, went further than merely stating that informer was "credible and reliable" and recited that the informer lacked a criminal record, had a favorable reputation in the neighborhood and was well thought of by associates.[1]

It appears that the State is urging that the unnamed informant's credibility was confirmed by verifying the information he furnished. In *Gonzales v. Beto*, 425 F.2d 963 (5th Cir. 1970), it was stated that an informer's tip can be significantly buttressed if "independent observations by the affiant corroborate sufficient details of the tip (whether suspicious or not) to negate the possibility that the informer 'fabricat[ed] his report out of the whole cloth.'" See *Polanco v. State*, 475 S.W.2d 763, Tex. Cr.App. and cases cited therein. If such corroboration occurred in the instant case the affidavit fails to recite such verification of the informer's tips by affiant. In determining the sufficiency of a hearsay affidavit to reflect probable cause for the issuance of a search warrant, we are bound by the four corners thereof. *Adair v. State*,

supra; *Polanco v. State*, supra; *Kemp v. State*, 464 S.W.2d 141, 147.

The State cites *United States v. Harris*, supra, for the proposition that the informant's declaration against penal interest would tend to prove the reliability and credibility of the informant. The affidavit in the instant case recites: "The informant states that in the past he had handled and smoked marijuana and he further states the contents of the two plastic bags to be of the same substance that he had handled and smoked in the past." In *Harris*, the Supreme Court said, "Concededly, admissions of crime do not always lend credibility to contemporaneous or later accusations of another." The affidavit in *Harris* recites "that the informant had purchased illicit whiskey from the residence described, for a period exceeding two years, most recently within two weeks." The Supreme Court noted this "was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself." In the instant case the affidavit reflects that informant stated "in the past he had handled and smoked marijuana" without divulging when or where same may have occurred. It is highly questionable if such statement tended to prove the credibility of the informant. Clearly such statement, itself and without more, does not furnish sufficient underlying circumstances to warrant a finding that the unnamed informer was credible and reliable.

We are mindful that affidavits for search warrants are normally drafted in the midst and haste of a criminal investigation, and adhere to the teachings of the United States Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, that they must be interpreted "in a commonsense and realistic fashion." See *Cummins v. State*, 478 S.W.2d 452, Tex.

---

1. It should be noted that the following comment regarding the affidavit in *Adair* appeared in footnote 2 therein: "The affidavit nevertheless is not a model and should not be used as such in future cases, as is often done in cases where this court has upheld the sufficiency of a certain affidavit."

Cr.App. Nonetheless, in our efforts to avoid technical and strict interpretation, we must be ever mindful that we stay within the boundaries of constitutional requirements. See *Bridger v. State,* 503 S.W.2d 801, Tex.Cr.App.

We conclude that the affidavit based upon hearsay information did not meet the second requirement of *Aguilar* concerning the credibility of the informer and the reliability of his information.

The judgments are reversed and the causes remanded.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

From the four corners of the affidavit we learn the following:

The informant admitted that in the past he had handled and smoked marihuana. The affidavit also states that the informant stated that he had found marihuana in his yard and took the same into his possession. Such possession was unlawful. Article 725b, Sec. 2(a), V.A.P.C. The informant also stated that he later delivered the marihuana to the appellant Dean. Therefore, the affiant had sworn that the informant admitted to him that he possessed and then delivered the marihuana in question. This is clearly a declaration against penal interest and satisfies the requirements of *U. S. v. Harris,* supra. See also *Aranda v. State,* 506 S.W.2d 221, Tex.Cr.App.

It is also important that the affidavit reflects that the informer gave affiant a specific physical description of the appellant Dean, who was, according to the affidavit, ". . . identified as a suspected narcotic user . . ." This affiant has thus sworn to facts which are tantamount to "a policeman's knowledge of a suspect's reputation", in *Harris,* supra.

I am also of the opinion that *Adair v. State,* 482 S.W.2d 247, Tex.Cr.App. is authority supporting this search warrant.

DOUGLAS, J., joins.

OPINION ON STATE'S MOTION
FOR REHEARING

ONION, Presiding Judge.

On the State's motion for rehearing we have carefully reconsidered the contention of the appellants that "the search warrant issued by the magistrate was not based upon probable cause because the reliability, if any, of the undisclosed informant was not established in the affidavit."

Appellants urge the court erred in overruling their motion to suppress since the affidavit in support of the search warrant was insufficient to meet the second prong of the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

In *Aguilar,* the Supreme Court wrote:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable.'" (Emphasis Supplied) 378 U.S. at 114–115, 84 S.Ct. at 1514.

With this in mind, we consider the pertinent portion of the affidavit of Officer Gardner:

"MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

"A reliable and credible person, hereinafter sometimes called informant, the identity of such reliable and credible person and such informant I wish not to disclose, has stated to me on this date 25 November 1972, he found two plastic

bags of green plant substance believed by him to be marijuana in his yard adjacent to 208½ East Broadway at approximately 3:00 AM 24 November 1972. He kept the two plastic bags of green plant substance in his possession until approximately 9:00 AM the same date and at which time he went to 208½ East Broadway and asked one white male approximately 20 to 25 years of age, tall and heavy build and having dark hair and a dark bushy beard, later identified by a photograph as a suspected narcotic user being one Dennis G. Dean. At such time the informant asked the said Dennis G. Dean if he had lost something and Dean's reply was yes. The dogs found it and drug (sic) it out into the yard and at this time the informant returned the two plastic bags of green plant substance into the house at 208½ East Broadway. The informant states that in the past he had handled and smoked marijuana and he further states the contents of the two plastic bags to be of the same substance that he handled and smoked in the past being marijuana. It is believed at this time the green plant substance is concealed in the house at 208½ East Broadway Street."

■ In determining the sufficiency of such affidavit to reflect probable cause for the issuance of the search warrant, we are bound by the four corners thereof. Article I, Sec. 9, Tex.Const., Vernon's Ann.St.; Article 18.01, Vernon's Ann.C.C.P.; *McLennan v. State*, 109 Tex.Cr.R. 83, 3 S.W.2d 447, 448 (1928); *Hall v. State*, 394 S.W.2d 659 (Tex. Cr.App.1965); *Gaston v. State*, 440 S.W.2d 297 (Tex.Cr.App.1969) (Concurring Opinion); *Ruiz v. State*, 457 S.W.2d 894 (Tex.Cr. App.1970) (Concurring Opinion at p. 896).

The affidavit in question reveals that it is sufficient to satisfy the first prong of the *Aguilar* test. The unnamed informer declared he had personally observed the green plant substance which he knew to be marihuana and had actually delivered the same to Dennis Dean at a stated address. These underlying circumstances are full enough to meet the first prong of the *Aguilar* test. We do not understand the appellants to contend otherwise, it being their contention that it is the second prong of the *Aguilar* test which is not satisfied by the affidavit, particularly since the unidentified informer is not shown to be of known or tested reliability.

It is true that many cases dealing with a search warrant affidavit based solely upon hearsay involve an unidentified informer who is described as one of proven reliability by having previously given true and correct information leading to the discovery of narcotics, arrests, convictions, etc. These allegations or type of description of the usual police informer undoubtedly stemmed from *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960).

■ The absence of an allegation of prior reliability, as in the instant case, is not ipso facto a fatal defect in the affidavit. *Adair v. State*, 482 S.W.2d 247, 250 (Tex.Cr.App. 1972).[1]

Although the affidavit in the instant case does not contain an allegation of prior reliability, we must determine if there are other factors present sufficient to satisfy the second prong of *Aguilar*.

■ It appears from the affidavit that the officer-affiant was confronted with a first-time informer or a citizen informer whom he described in the affidavit only as "a reliable and credible person," which conclusory statement is not sufficient standing alone. *Aguilar v. Texas*, supra; *Adair v. State*, supra; *Stoddard v. State*, 475 S.W.2d 744 (Tex.Cr.App.1972). The officer-affiant

---

1. As Chief Justice Burger said, speaking for himself and three other Justices, ". . . this Court in *Jones* never suggested that an averment of previous reliability was necessary." *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971). He noted that inquiry in determining probable cause should be whether the informer's *present* information is truthful and reliable.

did not elaborate upon such conclusory statement or offer the magistrate in the affidavit other factors bearing on a first-time informer's reliability and credibility often found in affidavits involving first-time informers such as the presence or absence of a criminal record, reputation in the community, reputation with associates, position in community. See, i. e., *Adair v. State,* supra; *Yantis v. State,* 476 S.W.2d 24 (Tex.Cr.App.1972); *Wetherby v. State,* 482 S.W.2d 852 (Tex.Cr.App.1972); *Cook v. State,* 497 S.W.2d 295 (Tex.Cr.App.1973).

Therefore, we must look elsewhere in the affidavit to determine if the conclusory statement is supported.

In the affidavit we do find a declaration against penal interest. The informer had stated that based on his past experience he knew that the substance he found was marihuana and he kept it in his possession for some six hours. Such possession was unlawful and in violation of Article 725b, Sec. 2(a), Vernon's Ann.P.C., then in effect. He later talked to Dean and delivered the marihuana to Dean's house. There is a second possible declaration against penal interest in the affidavit wherein the informer stated he had in the past handled and smoked marihuana. While this statement certainly lends great strength to other portions of the affidavit, it cannot be considered as a second declaration against penal interest in that there is no showing when or where the same occurred. Nevertheless, we do have one declaration against penal interest to consider.

One of the ambiguities arising from *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), is whether a declaration against penal interest by the informer is alone sufficient to support a finding that the informer is credible. The affidavit in *Harris,* as in the instant case, did not aver the previous reliability of the informer as a basis for the affiant's conclusion that the informer was credible. Five Justices agreed on the ultimate proposition that the affidavit in *Harris* was sufficient. The opinion of the court, however, was divided into three parts. Part I discussed the aggregation of facts which made the affidavit sufficient. Part II discussed the value of using affiant's personal knowledge of the suspect's background to corroborate the informer's tip. Part III discussed the declaration against penal interest as "an additional reason for credibility of the informant's tip." Three Justices in the majority emphasized all three parts as the basis for their holding. One Justice agreed only with Part I, and another Justice agreed only with Part III and a consideration of the affidavit "as a whole." Four Justices dissented, deeming the affidavit insufficient. *Harris* thus seems to stand only for the proposition that the affidavit in the case was sufficient, as no more than four Justices would agree that a declaration against penal interest is sufficient. From an examination of federal and State cases decided since *Harris,* the prevailing view appears to be that such declarations against penal interest are indeed sufficient, but this conclusion is not made without some difficulty because in many instances the courts have not been faced with deciding the conclusiveness of declarations against penal interest alone.[2]

**2.** In *United States v. Barfield,* 507 F.2d 53 (5th Cir. 1975), the only item mentioned supporting the credibility of the informant was the fact that the statement made in the affidavit was against his penal interest. Similarly, in *United States v. Neal,* 500 F.2d 305 (10th Cir. 1974), a statement against penal interest was the sole support for the second prong of *Aguilar,* and the affidavit was upheld. Other cases so holding are numerous: *Quigg v. Estelle,* 492 F.2d 343 (9th Cir. 1974); *Armour v. Salisbury,* 492 F.2d 1032 (6th Cir. 1974) (declarations against penal interest are "sometimes conclusive"); *United States v. Carmichael,* 489 F.2d 983, 986-7 (7th Cir. 1973) (en banc) (declaration sufficient); *Agnellino v. New Jersey,* 493 F.2d 714 (3d Cir. 1974) (sufficient); *State v. LaBarre,* 292 Minn. 228, 195 N.W.2d 435, 441 (1972) (sufficient); *People v. Bolender,* 24 Ill.App.3d 804, 322 N.E.2d 624, 627 (1975) (sufficient); *People v. Barcia,* 37 A.D.2d 612, 323 N.Y.S.2d 517 (1971) (sufficient); *Wright v. State,* 309 So.2d 557

Likewise, in the instant case we need not decide whether a declaration against penal interest, standing alone or just what nature of a declaration against penal interest standing alone, is sufficient to support the reliability and credibility of the informer. This is so because there are other factors bearing on probable cause.

In *United States v. Squella-Avendano,* 447 F.2d 575 (5th Cir. 1971), the court in applying a three tier method for testing whether the *Aguilar* requirements have been met said in part:

". . . First, if the information provided is in such 'detail' and 'minute particularity' that 'a magistrate, when confronted with such detail, could reasonably infer that the informant has gained his information in a reliable way,' then the report, if sufficiently incriminating, may, without more, be grounds for finding probable cause. . . ." See and cf. *Adair v. State,* supra.

■ In light of the above, an examination of the search warrant affidavit reveals that the informer, though unnamed, stated that "in his yard adjacent to 208½ East Broadway" he had on November 24, 1972, found green plant substance in two plastic bags which he knew was marihuana from his past experience with it, that he kept it for six hours and then took it to 208½ East Broadway where a white male, described in detail, took the marihuana, claiming he lost it, and took the same into the house. From the description given, Dennis Dean was identified as the white male involved.

It would be difficult to imagine a case where the information provided was with such detail and minute particularity.

In the instant case the magistrate was confronted with an affidavit in such detail that it could reasonably be inferred the informer had gained his information in a reliable way and was sufficiently incriminating, plus the fact that the informer made a declaration against penal interest, and further was a citizen informer who came forward with the information, and, although his name was not revealed, the location of his residence was in effect revealed. We conclude that when the affidavit is considered as a whole in the common sense and realistic way recommended in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the second prong of the *Aguilar* test was met. We need not therefore discuss whether the affidavit also could be construed as reflecting the officer-affiant's personal knowledge of Dean's reputation as a suspected narcotic user.

Both appellants challenge the sufficiency of the evidence to show the offense of possession of marijuana as to each of them.

The record reflects that on November 25, 1972, peace officers, armed with a search warrant, conducted a search at a house at 208½ East Broadway in Del Rio. Deputy sheriff Joe Gardner testified that as he approached the house he saw appellant Abercrombie through the screen door sitting in a chair who got up with a bundle in his hand and began "running, moving fast" in an easterly direction. When he entered the house, Abercrombie was coming out of the bathroom, where in the commode there

(Fla.App.1975) (sufficient); *Manley v. Commonwealth,* 211 Va. 146, 176 S.E.2d 309 (1970), cert. den. 403 U.S. 936, 91 S.Ct. 2245, 29 L.Ed.2d 716 (1971) (sufficient). Those cases definitely stating that a statement against penal interest is insufficient are few: *Commonwealth v. Fleurant,* 311 N.E.2d 86 (Mass.App.Ct.1974).

Despite the several cases stating that a declaration against penal interest alone may be sufficient, most of the discovered cases involved statements far more inculpatory than the one present in the instant case:

admissions of participation in robbery, obstruction of justice, drug sales, etc. Often the informant was an accomplice and therefore at least as culpable in the crime in issue as was the defendant. In many other cases a statement against penal interest was present, but there were also many other factors which led to the courts' conclusions. See, e. g., *State v. Hayward,* 523 P.2d 1278 (Or.App.1974); *State v. Everett,* 214 N.W.2d 214 (Iowa 1974); *United States v. Mackin,* 163 U.S.App.D.C. 427, 502 F.2d 429 (1974).

were approximately 30 rolled cigarettes with one plastic bag containing a green plant substance, which was all shown to be marihuana. Gardner testified that "there was marihuana, marihuana paraphernalia, narcotics paraphernalia, lying around different places of the room (living room), couch, end table, coffee table, the dining table, in the kitchen. It was just everywhere." In the kitchen oven were found a plastic dishpan and a cake-type pan with raw stems of marihuana. Traces of marihuana were found on the stove, and in the kitchen was a large quantity of plastic baggies. In the hot water heater closet another box of marihuana was discovered. One baggie of seeds was taken from the living room couch, traces from an ash tray. There were also found an incense lamp, scales, pipes, roach holders and an alligator-type clip. On the table was found another plastic baggie with marihuana in it. A number of items of clothing found in one of the two bedrooms had traces of marihuana on them or in the pockets.

Jerry Wayne Davis was the only person other than Abercrombie in the house when the officers conducted the search. Mrs. Mildred Stewart testified she owned the house in question and had rented it to appellant Dennis Dean, who paid the rent with the understanding that he and one Wesley Daniels would live there, and she testified they did. James Marston testified he lived at 204½ East Broadway, adjacent to the house in question, and also rented from Mrs. Stewart. He related that he knew Dennis Dean by sight as they by-passed each other going into their respective houses. In the early morning hours of November 24, 1972, he found a green grassy substance scattered over the yard between the two houses in plastic bags which he knew from his own use of it to be marihuana. He testified he took the substance into his house and put it in paper bags as the plastic bags had been chewed by some animal, and kept the marihuana some six hours and then went to Dean's house at 9 or 9:30 in the morning and had a conversation with Dean. When asked if he lost something during the night, Dean replied in the affirmative and asked Marston if he knew where it was. Marston said, "Yes . . . I have got it over at my house. I will go get it." Marston walked 15 to 20 feet, reached in his door and picked up the bags, and within 10 or 15 seconds was again knocking on Dean's door. When it opened, a hand came out and took the bags. Marston never did see Dean leave the house during the interval. Mrs. Stewart saw Dean there that morning and he was observed passing a football in the street in front of the house about 1 p. m. before the search which occurred about 5 p. m. Dean was not at the house at the time of the search, but was arrested at 6:45 p. m. in Abercrombie's car.

Abercrombie argues that he did not live at the dwelling in question, that no marihuana was shown to have been found on his person, that the officers did not testify as to any marihuana smoke or odor when they entered the house. Dean, likewise, argues no marihuana was found on his person when arrested, and he was not present when the search was conducted.

The court charged the jury on the law of circumstantial evidence.

█ In proving possession in narcotics cases, it is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Adair v. State,* 482 S.W.2d 247 (Tex.Cr.App.1972), and cases there cited; *Harvey v. State,* 487 S.W.2d 75 (Tex.Cr.App.1972); *Buntion v. State,* 476 S.W.2d 317 (Tex.Cr.App.1972); *Shortnacy v. State,* 474 S.W.2d 713 (Tex.Cr.App.1972); *Ellis v. State,* 456 S.W.2d 398 (Tex.Cr.App. 1970).

█ Various facts and circumstances may be shown to prove that the accused and another person or persons acted together in jointly possessing a narcotic. *Adair v. State,* supra; *Harvey v. State,* supra; *Ochoa v. State,* 444 S.W.2d 763 (Tex.Cr.App. 1969); *Perry v. State,* 164 Tex.Cr.R. 122, 297 S.W.2d 187 (1957).

■ Where there is an absence of direct evidence that an accused was in exclusive possession of a narcotic, then possession, if any, must be proved by circumstantial evidence. *Collini v. State,* 487 S.W.2d 132, 136 (Tex.Cr.App.1972).

■ The evidence presented by the State must affirmatively link the person accused of possession to the narcotic which he is alleged to have possessed. *Haynes v. State,* 475 S.W.2d 739 (Tex.Cr.App.1972); *Hausman v. State,* 480 S.W.2d 721 (Tex.Cr.App.1972); *Payne v. State,* 480 S.W.2d 732 (Tex.Cr.App.1972); *Harvey v. State,* supra. This affirmative link is established by showing additional independent facts and circumstances which may indicate the accused's knowledge of the narcotic, as well as his control over such. See *Adair v. State,* supra; *Harvey v. State,* supra; *Collini v. State,* supra.

■ In the instant case the appellant Abercrombie was seen running with a bundle in his hand as the officers approached the house in question. As they entered he was seen coming from the bathroom where the officers immediately found a plastic bag of marihuana, as well as marihuana cigarettes in the commode. Marihuana or traces of the same were literally found everywhere in the house. Early on the morning of the search Marston found plastic bags of marihuana in his yard adjacent to the house rented by appellant Dean. When six hours later he talked to Dean, he admitted he had lost "something" and asked Marston if he had it. When Marston returned within 10 to 15 seconds with the marihuana, a hand reached out the door and took the same. Marston never did see Dean leave the house during that time. There was also evidence Dean was passing a football in the street near his rented house. While Dean was not present at the time of the search, the house was under his control, marihuana was literally everywhere, and he or someone in the house had accepted the marihuana brought by Marston after Dean's conversation with him. We con-

clude the evidence was sufficient to support the verdict of guilty as to both Dean and Abercrombie.

■ Appellant Abercrombie also complains in one ground of error of the court's failure to respond to his three objections to the court's charge. The ground of error is multifarious under Article 40.09, Vernon's Ann.C.C.P. Further, we have examined the contentions and find that the court's charge in essence gave the same instructions the appellant sought, and that error or errors, if any, were not calculated to injure the rights of the appellant Abercrombie or deprive him of a fair and impartial trial. See Article 36.19, Vernon's Ann.C.C.P.

Appellee's motion for rehearing is granted, the judgments of reversal are set aside, and the judgments are affirmed.

ROBERTS and ODOM, JJ., dissent for the reasons stated in the opinion on original submission.