Fred Donley WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–81–043 CR.

Court of Appeals of Texas, Beaumont.

June 16, 1982.

Rehearing Denied Aug. 4, 1982.

Eleanor C. Barnes, Houston, for appellant.

John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

OPINION

DIES, Chief Justice.

Appellant was charged with the offense of credit card abuse, enhanced by two previous convictions of felonies. A jury found him guilty of the primary offense and also found the enhancement counts to be true. He was sentenced by the trial court to life imprisonment as a habitual offender, from which he has appealed.

Appellant's first two grounds of error really attack the police officer's warrantless arrest and search of his automobile. The officers in response to a call went to the security guard at the K-Mart store in Beaumont. He told them that the stores in Orange and Lake Charles had been victimized by persons who charged the market price on items and then demanded a cash return. The officers then questioned a

young black female who first said her name was "Gold Dust" but later revealed she was Shurice Minnis. She was arrested for investigation as a juvenile runaway. When Shurice was in the patrol car, she told officer Cole she was working the stores with a black male and a white female who were driving a grayish-white Mercedes with Florida license tags. As the officers were exiting the parking lot, they saw a Mercedes which fitted the description, and inside were a black male and a white female.

They stopped the vehicle, searched it, found narcotics in a keycase in the door, arrested appellant, then began an inventory of the trunk which produced among other items a credit card receipt and a Remington shaver, which became the basis of appellant's primary conviction.

Appellant forcefully argues in a well prepared brief that the officers had no probable cause to search, arrest, or investigate. See *Brown v. State,* 481 S.W.2d 106 (Tex.Cr.App.1972). *Vernon's Ann.C.C.P., Art. 14.04* provides:

"Where it is shown by satisfactory proof to a peace officer, upon representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

The facts and circumstances known to the officer must be reasonably trustworthy information which would lead a man of reasonable caution and prudence to believe the search will produce evidence pertaining to a crime. *Brunson v. State,* 506 S.W.2d 594 (Tex.Cr.App.1974).

Appellant argues as in *Brunson v. State,* supra, and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the lack of credibility of the informant Shurice Minnis. It is true, the officers had never dealt with her before, did not know of her credibility, and at first was given by her an incorrect name as appellant argues. However, the great difference in Minnis and the informants in *Brunson v. State,* supra, and *Aguilar v. Texas,* supra, is that Minnis re-

vealed she was a part of the criminal combination, which in itself, together with the other circumstance learned by the officers at K-Mart, gave great credibility to Minnis' information. Apparently, the question of whether statements made against penal interest are alone sufficient to establish credibility has not been decided. See *Abercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App. 1974). We think such a statement alone should be sufficient. But even if not, the information obtained by the Beaumont officer from the K-Mart security guard, together with the corroboration of the tip by the sight of the light colored Mercedes, with Florida license plates, and containing a black male and white female, buttressed the tip. See *Polanco v. State,* 475 S.W.2d 763 (Tex.Cr.App.1971). See also, *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971):

"Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. [penal admissions] People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support finding of probable cause to search...." Quoted in Vol. 1 LaFave, *Search and Seizure,* § 3.3 at 503 (1978).

Of course, in *Aguilar v. Texas,* supra, the court was dealing with an affidavit for a warrant; whether the affidavit showed probable cause for search. And in the case at bar the search was made without a warrant.

"Today, it is clearly established that the first clause [of the Fourth Amendment, U.S. Constitution] does provide some additional power. [Arrests made not pursuant to a warrant.] For one thing, subject to a possible limited exception ['namely, when it is necessary to enter private premises to make the arrest.' Vol. 1 LaFave, *Search and Seizure,* 33.1 at 439 n. 8 (1974) ] the police are free to make an arrest without first obtaining

an arrest warrant even when there was ample time to obtain one. Secondly, movable vehicles may be searched without a search warrant when the exigencies of the situation are such that it is not feasible to first obtain a warrant.... But none of these warrantless activities is permissible under the Fourth Amendment unless the police have probable cause for the arrest or search." Vol. 1 LaFave, *Search and Seizure,* § 3.1 at 439–440 (1978).

We hold that the exigencies of the situation in the case at bar made it not feasible for the officers to first secure a warrant, and that they had probable cause to stop and search the Mercedes car. The grounds of error are overruled.

■ Appellant's final ground of error asserts: "The evidence is insufficient to support the appellant's conviction as a habitual criminal because the prosecution failed to prove that the second prior conviction alleged for enhancement purposes was committed subsequent to the first prior conviction alleged for enhancement purposes as required by the Texas Penal Code Section 12.42(d)." Appellant cites: *Wiggins v. State,* 539 S.W.2d 142 (Tex.Cr.App.1976); *Hickman v. State,* 548 S.W.2d 736 (Tex.Cr. App.1977); *Gutierrez v. State,* 555 S.W.2d 457 (Tex.Cr.App.1977); *Porier v. State,* 591 S.W.2d 482 (Tex.Cr.App.1979). This, of course, is the rule in Texas. However, State's Exhibit No. 16 which came into evidence without objection contains an authenticated copy of the information upon which appellant was convicted of the offense of writing a forged check. Made a part of that charging instrument is a copy of the check which was alleged to have been forged. This check is dated "3/9/76." The judgment and sentence in the first conviction was entered on January 28, 1972. This ground of error is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

KEITH, Justice, dissenting.

Primarily, my dissent is confined to an application of the rule enunciated by the Supreme Court of the United States very recently to the facts of this case. While this cause was under submission, that Court changed profoundly the rules regulating the warrantless search of automobiles and the contents thereof.

In *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), hereinafter "Ross" or volume and page of Law Week), the Court reconsidered several recent cases, concluding (at —— – ——, 102 S.Ct. at 2172):

"We hold that the scope of the warrantless search authorized by that exception [recognized in *Carroll v. U.S.,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543] is no broader and no narrower than a magistrate could legitimately authorize by warrant. *If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."* [1]

Before addressing the two specific holdings in *Ross,* an expanded summary of the underlying record is needed to place the operative facts in focus. The facts essentially are undisputed and my account differs from the majority only in setting out more of the details relating to the stopping of the vehicle and the search thereof.

At the suppression hearing, Beaumont Police Officers Charles Cole and Michael Sticker told of being called to the K-Mart store "to investigate a possible shoplifting." There they talked with the store's security officer, Johnson, who had a young black female in custody who told the officers that she "had been changing prices, and trying to get a refund." Johnson gave Cole a bulletin from the K-Mart offices describing a swindling operation in Florida, the details of which are immaterial to this case.

Johnson also told the officers that the black female had been accompanied by a white female who had eluded capture. The

1. All emphasis has been supplied unless otherwise indicated.

black female had no identification with her and told Cole her name was "Gold Dust", but "finally said her name was Shurice Minnis." She was young and was arrested "for investigation of Juvenile Runaway," as well as for investigation of credit card abuse.

After Minnis had been placed under arrest, she told the officers that she was a member of a group engaged in a refund scam, and had been accompanied by "another black male and a white female" who were driving a gray or light colored Mercedes car with Florida tags. No names were given.

The officers saw a car such as that described by Minnis a few blocks from the K-Mart store. They stopped the car and the driver, our appellant, emerged leaving the car door open. A white female, Carol Louise Pridgeon, was on the back seat of the car. Appellant produced a driver's license.

I turn now to a summary of Officer Cole's cross-examination since it sets out more succinctly the basic information possessed by the police officers when they stopped the car.

The only information concerning credit card use or abuse came from Johnson at K-Mart; the officers had never dealt with Minnis before as an informant or otherwise; consequently, they "had no idea what her reputation was for truth and veracity." No one at K-Mart told of any theft or crime having been committed in Beaumont, but the security guard (Johnson) *thought* she (Minnis) "was working with this group of people that was (sic) stealing this stuff from K-Mart."

The driver of the Mercedes vehicle did nothing "illegal in regard to the traffic laws." Appellant showed a "current driver's license" and, at that time, Cole had no "other reason to detain him."

Cole said that appellant was not under arrest although he was talking freely "just rambling on" telling Cole that Pridgeon, the

girl in the back seat, was a hitchhiker. However, a few minutes later, Minnis, according to Cole, told Sticker that there were some "drugs in the car." Minnis said that the drugs were "inside the driver's pouch, in a brown leather key case," the "driver's pouch" being "sort of a concealed place," near the driver's seat.

Officer Sticker went to the opened door, "looked straight down and shined [his] flashlight *into* the pouch" on the door and saw the "brown key case." He pulled the key case out of the pouch ("It was closed, so I unzipped it.") and found "[t]he suspected narcotic" inside the key case. Sticker, asked why he was searching the vehicle, responded that it was "based on information given to me by Miss Minnis" but that there were no drugs in "plain and open view." [2]

Having found the key case and seen what the officers thought was cocaine and marihuana, appellant was formally arrested and placed in the police vehicle. Sticker said he was not in fear of his safety since appellant was in the police car; that Cole could have taken appellant to the police station and procured a search warrant while he stood guard over the vehicle. The cross-examination of Sticker was summarized:

"And you did this, based solely on some information given to you by a person you had never met before, that had lied to you before, during your conversation with her? Is that not true?"

Sticker answered: "That's correct."

Up until this time, nothing connecting appellant with K-Mart, other than hearsay statements of Minnis had been learned. Having placed appellant under arrest for "investigation of possession of a controlled substance and marihuana," Cole and Sticker then began the search of the locked trunk of the car, without the consent of appellant.

While Sticker was "inventorying the trunk," he found a group of pictures "when he first opened the trunk." The pictures, "obscene" in the opinion of the officer, were

---

**2.** The State does not assert that the finding of the alleged controlled substance has any bearing on this case.

photographs of appellant, Pridgeon and Minnis.[3]

About that time, a hard rain and wind storm blew in and the car was towed to the police station where the "inventory search" was resumed several hours later. It was during this second warrantless search of the car at the police station that the incriminating material—a tape player, a digital clock, a shaver, and a credit card, all connected upon the trial with K-Mart—were found in the trunk.

At the conclusion of the hearing on the motion to suppress, it was overruled. Upon the trial, substantially the same evidence was admitted, over objection, in support of the State's cause.

The *Ross* Court, by quoting from *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298 (1978), and *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967), made it clear that it had not abandoned the rule that searches conducted outside the judicial process are *per se* unreasonable. It simply held that the automobile exception recognized in *Carroll,* supra, was " 'specifically established and well-delineated.' " (—— U.S. at ——, 102 S.Ct. at 2172) See also, *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Cr. App.1976), where *Katz* is discussed and followed.

Appellant appropriately challenged the arrest and the admission of the results of the warrantless search so that I now reach the area of my dissent. Unless the officers lawfully stopped the vehicle *and* had probable cause to search the car after it had been stopped, the evidence as to the items found in the delayed search at the police station, relating to credit card abuse, was subject to suppression under the "fruit of the poisonous tree" doctrine. *Faulkner v. State,* 549 S.W.2d 1, 2 (Tex.Cr.App.1976).

Under *Ross,* proof must show:

(a) "probable cause [which] justifies the search" of

(b) "a lawfully stopped vehicle."

If these two conditions are met, "the search of every part of the vehicle and its contents" is justified. (—— U.S. at ——, 102 S.Ct. at 2172)

The new parameters established in *Ross* having been visited, I now turn to a consideration of the evidence tending to support the two conditions precedent, first examining the second requirement that the vehicle searched must have been lawfully stopped.

The police officers did not even pretend that the initial stop of appellant was because of any traffic or other law violation committed in their presence. See *Snyder v. State,* 629 S.W.2d 930, 934 (Tex.Cr.App. 1982), for a brief discussion of a warrantless arrest for certain traffic violations. Consequently, the rule permitting receipt of evidence obtained by a search of the person or of objects immediately associated with the person of one lawfully arrested for a traffic violation has no application. See and cf., *Stewart v. State,* 611 S.W.2d 434, 436 (Tex. Cr.App.1981), for a discussion of the search following such an arrest. See also, *Morr v. State,* 631 S.W.2d 517, 518 (Tex.Cr.App. 1982, on rehearing).

Both officers were positive that no offenses were committed in their presence or view. Consequently, I find no merit in the State's contention that the arrest was lawful under *Art. 14.01(b), V.A.C.C.P.* See and cf., authorities cited in *Gill v. State,* 625 S.W.2d 307, 312 (Tex.Cr.App.1980), Clinton, J., concurring).

State's counsel also seeks to uphold the validity of the arrest by quoting *Art. 14.04, V.A.C.C.P.,*[4] quoted in the margin. In do-

---

3. Minnis passes from the scene following the arrest of appellant and the search of the car; she did not testify at the trial, nor did the jury learn of the cocaine, marihuana, or the "obscene" pictures. We know nothing of Pridgeon. Nor did the store guard Johnson appear at the trial.

4. *Art. 14.04:* "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

ing so, reference is made to the statements made to the officers by security guard Johnson and the information given by Shurice Minnis. Counsel is confronted with the undisputed admissions of the officers that this was the first time they had seen or heard of Minnis and that they knew nothing about her reliability or her reputation for veracity. Then, too, she had been untruthful to them but a few moments earlier when she wouldn't even give the officers her name.[5]

There is even less support for the arrest found in Johnson's report to the officers. A careful review of testimony coming from the officers does not reveal any evidence that anyone—outside of Florida—had engaged in the credit card scam Johnson described; he reported no felony having been committed in Texas. Moreover, Johnson made no appearance at the trial.

State's counsel seeks to bolster the credibility of Minnis by this argument:

"The latter [Minnis] was not merely an informant whose credibility was unknown or questionable. It [her statement to the officers] was against her penal interest . . . ."

Reliance is placed upon *Abercrombie v. State,* 528 S.W.2d 578, 583 (Tex.Cr.App. 1975), where the Court noted that the absence of an allegation of prior reliability of an informant in an affidavit to procure a search warrant "is not ipso facto a fatal defect in the affidavit."

However, the Court in *Abercrombie* upheld the sufficiency of the affidavit, not only because it found "a declaration against penal interest" (528 S.W.2d at 584), but because the Court found many other facts bolstering its conclusion that the affidavit satisfied the "common sense" requirements for such an affidavit (at 585).

The key to the majority holding is this simple sentence:

"We think such a statement [one against penal interest] *alone* should be sufficient."

The authorities mustered in support of this emasculation of the probable cause requirement embedded in both the state and federal constitutions are, putting it most charitably, neither robust nor extensive.

I cannot find that *Abercrombie* has been followed in Texas on the precise point under discussion, although it has been mentioned upon several other occasions. Nor do I find that *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), from which the lengthy quotation is taken, is an authoritative or binding precedent. Professor LaFave, to whom the majority attributes the quotation, has expressed doubts as to whether *Harris* is more than a plurality opinion on the precise point.[6] The Maryland Court of Appeals was much more emphatic in its determination that the quoted language was simply part of a plurality opinion, not joined in by a majority of the justices.[7]

The third case cited, *Polanco v. State,* 475 S.W.2d 763 (Tex.Cr.App.1971), merits little attention. It does not mention nor does it concern a statement made against penal interest, the main thrust of the holding of the majority.

While *Ross* has done much to clarify the rules governing warrantless search of automobiles and the several areas thereof as well as items carried therein, it has not dispensed with the requirement that the search must still be based upon probable cause—only the prior intervention of a magistrate has been waived.

**5.** Officer Cole was asked: "You couldn't say she was a credible informant?" He replied: "Right at first, no, sir."

**6.** *1 LaFave, Search & Seizure, § 3.3, at 503, fn. 17 (1978).*

**7.** *Merrick v. State,* 283 Md. 1, 389 A.2d 328, 331–332 (Md.Ct.App.1978), treats the subject in detail but without Professor LaFave's doubts,

saying: "In other words, the conclusion regarding statements against penal interest expressed by the four justices in the Burger opinion [quoted by the majority] is not controlling in this State; it is no more binding than is the contrary conclusion reached by the four justices in the Harlan dissenting opinion."

I join in this assessment of the precedential value of the *Harris* quotation.

Since probable cause—but without a magistrate's intervention—must exist in order to search the "lawfully stopped vehicle", a matter not discussed in *Ross*, I now turn to this fertile field of the law. In so doing, I encounter both prongs of *Aguilar,*[8] so well known that I simply summarize the holding in language taken from a text: *1 Texas Criminal Practice Guide § 31.03[3][b] and [c], at 31.12 (Teague, 1982):*

"The first prong of the *Aguilar* test may be met if the affidavit states the circumstances which led the informant to conclude *that the items to be seized were where he or she claimed them to be.*

\* \* \* \* \* \*

"The second prong of the *Aguilar* test requires that the affidavit establish that the informant is reliable or the information credible."

The State has not met or satisfied *either* prong of *Aguilar.* Minnis did *not* tell Johnson or the officers where any specific items (other than the controlled substances) were located in the car nor did she describe any article with sufficient particularity that it could be identified even as to category, i.e., an electric razor as distinguished from a portable radio. She flunked the first prong; and, the officers had no other information to act upon.[9]

Only by the majority's misplaced reliance upon *Harris* and *Abercrombie* has the majority clothed Minnis with an aura of reliability or credibility. Thus, the State failed to discharge its burden of proving compliance with the second prong of *Aguilar.*

Conceivably, the arresting officers may have had more than the proverbial "inarticulate hunch"[10] in stopping appellant's vehicle but I need not speculate upon their justification of a temporary detention for investigatory purposes.[11] Such a question is not present in this case and I am left with the hard and stubborn fact that the arrest was not lawful under the prior decisions of our Court of Criminal Appeals and of the Supreme Court of the United States.

The State failed on both steps of the newly formed *Ross* standards: it did not establish a lawful arrest; and, it is equally certain that the evidence possessed by the officers did not constitute probable cause which, if reduced to affidavit form, would have authorized a neutral magistrate to issue a search warrant.

Consequently, the items found in the warrantless search at the police station after the storm subsided, are the fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The evidence linking appellant to the offense of credit card abuse was obtained illegally by the officers in violation of the constitutions of the United States and of this State. Such evidence was inadmissible. Indeed, Judge McCormick, speaking for the Court in *Morr v. State,* supra (631 S.W.2d at 518), said: "Any fruits resulting from such an illegal stop [and search of a vehicle] would have been inadmissible."

---

8. *Aguilar v. Texas,* 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). While the majority makes passing reference to *Aguilar,* I remain unimpressed with its citation as support for the *holding* that "the exigencies of the situation in the case at bar made it not feasible for the officers to first secure a warrant."

9. Even if one were to assume that the officers had probable cause to search the interior of the automobile to discover the controlled substances found in the "pouch", no effort was made to show probable cause to search the trunk where the incriminating evidence was found. The *Ross* Court spoke to this matter: "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not

support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." (—— U.S. at ——, 102 S.Ct. at 2172)

10. See, e.g., *Ceniceros v. State,* 551 S.W.2d 50, 55 (Tex.Cr.App.1977, on rehearing).

11. See the authorities discussed in *Armstrong v. State,* 550 S.W.2d 25, 30 (Tex.Cr.App.1977, on rehearing).

Under the foregoing authorities, the trial court erred in overruling the motion to suppress the evidence of the search and in admitting the results thereof in evidence upon the trial of the cause. For the reasons set out, I would reverse the judgment of the cause and now respectfully dissent from an affirmation of the conviction.