Opinion issued May 7, 2015



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-13-00607-CR

_____

**VANESSA MARIE VAN-NESS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 11CR1523**

---

## MEMORANDUM OPINION

Vanessa Marie Van-Ness pleaded guilty to the second-degree felony offense of possession with intent to deliver a controlled substance and the trial court assessed her punishment at four years' confinement. On appeal, she contends that the trial court erred in denying her motion to suppress evidence obtained as a result

of a search warrant because the affidavit supporting the warrant was insufficient to establish probable cause for the search. We affirm.

## Background

On May 6, 2011, appellant was arrested for possession with intent to deliver a controlled substance, namely, methamphetamine, in an amount weighing four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a) (West 2010). Appellant subsequently filed a motion to suppress alleging that the affidavit on which the warrant was based lacked sufficient probable cause to support the search of her house. Following a hearing, the trial court orally denied appellant's motion. Appellant thereafter pleaded guilty to the charged offense and the trial court assessed punishment at four years' confinement. This appeal followed.

## Discussion

### A. Standard of Review and Applicable Law

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this standard of review, we will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.* We give the trial court almost complete deference in determining historical facts, while

reviewing de novo its application of the law to those facts. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment to the United States Constitution provides that no warrants may issue, whether for arrest or search, in the absence of probable cause. U.S. CONST. amend. IV; *Henry v. United States*, 361 U.S. 98, 100, 80 S. Ct. 168 (1959); *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007). Specifically, a magistrate may not issue a search warrant without first finding probable cause "that a particular item will be found in a particular location." *Rodriguez*, 232 S.W.3d at 60. In reviewing an affidavit attached to an application for a search warrant, "[t]he test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a 'substantial basis for the issuance of the warrant.'" *Id.* (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S. Ct. 2085 (1984)).

To determine whether probable cause exists, the magistrate must consider the totality of the circumstances in deciding whether there is a fair probability that contraband or other evidence of a crime will be found at the specified location. *Rodriguez*, 232 S.W.3d at 60. A finding of "fair probability" cannot be based on "mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983). When reviewing an issuing magistrate's determination, we should interpret the affidavit in a commonsensical and realistic

3

manner, recognizing that the magistrate may draw reasonable inferences. *Rodriguez*, 232 S.W.3d at 61. Ultimately, our inquiry focuses on "whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location. The issue is not whether there are other facts that could have, or even should have, been included in the affidavit . . . ." *Id.* at 62. When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* In assessing whether sufficient facts were included in the affidavit to support probable cause to conduct the search, we are limited to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 388 (Tex. Crim. App. 2004).

## B. The Affidavit

In his search warrant affidavit, League City Police Officer Eric Leland, stated, in relevant part:

> On May 3, 2011, your Affiant spoke with Brittany Germany, who was arrested on the same day by the League City Police Department (LCPD) for an outstanding municipal warrant through the city of Humble, Texas. Germany provided your Affiant with the following information through a videotaped statement:

> On May 2, 2011, Germany was picked up at her residence in Tomball, Texas by David McMillen II. According to Germany, her friend, Tanya, was supposed to pick her up and take her to La Marque, Texas. Instead, Tanya sent her ex-husband, McMillen, to pick her up, whom Germany had never met before. Upon picking her up, McMillen drove her to his residence, located at 1802 Cardinal Drive in League City, Galveston County, Texas. Germany stated that she and McMillen arrived at McMillen's residence at approximately 9:30 or

4

10:00 p.m. When they arrived, Germany said Vanessa (later identified as Vanessa Vanness), Misty, (later identified as Misty Devlin), and an unknown white male, possibly named Scott, were already inside the residence. At some point, methamphetamine was produced in the residence. According to Germany, McMillen, Vanness, Devlin, and Scott all had methamphetamine in their possession, which was provided by McMillen. Germany said they all used methamphetamine, to include her. Sometime during the night of May 2–May 3, 2011, McMillen sold 1/8 ounce of methamphetamine to an unknown female. Germany said the female made the purchase from McMillen inside the residence, but she doesn't know how much the 1/8 ounce cost. According to Germany, McMillen was secreting his methamphetamine behind his bed mattress, and Vanness was keeping her methamphetamine inside her white and blue striped purse. Germany further stated Vanness was living at the residence with McMillen, and that McMillen, Vanness, and Devlin all sell methamphetamine. At some point during the morning of May 3, 2011, Germany got into an altercation with McMillen and left the residence. She stated she knows there is more methamphetamine in the residence, but is unsure as to the quantity.

On May 3, 2011, your Affiant showed Germany a picture of Vanessa Vanness, and she positively identified her as the person she knows as Vanessa that was at the suspected place and premises. . . .

On May 3, 2011, your Affiant checked the criminal histories of David McMillen II and Vanessa Vanness. According to McMillen's criminal history, he has at least nine criminal convictions, including one possession of a controlled substance. According to Vanessa Vanness' criminal history, she has six drug related arrests with one conviction.

On May 3, 2011, LCPD Detectives S. Yount and S. Antley told your affiant they conducted drive-by surveillance of the suspected place. Det. Antley stated he observed a green Mitsubishi 4 door passenger vehicle, bearing Texas registration GRF750, parked in front of the driveway of the suspected place. According to police records located by Det. Antley, this vehicle was stopped on this same day by the Friendswood Police Department. As a result of this stop a methamphetamine smoking pipe was seized from the vehicle and Ashley Padel was arrested for possession of narcotic paraphernalia.

5

On July 22, 2009, your Affiant participated in a Texas Department of Public Safety (DPS) Narcotics Service search warrant at the said suspected place and premises. This search warrant was for methamphetamine and listed McMillen and Vanness as the individuals in control of the suspected place. The search warrant resulted in the seizure of approximately 1/8 ounce of methamphetamine and an amount of U.S. currency. McMillen was charged with possession of methamphetamine and Vanness was charged with Manufacture/Delivery of methamphetamine as a result.

## C. Analysis

Appellant contends that the affidavit was insufficient to support the issuance of a warrant to conduct the search of the residence. Specifically, she argues that the warrant is largely based on the uncorroborated hearsay of a first-time informant under arrest with no record of reliability and is, therefore, insufficient to support a finding of probable cause.

When an affidavit contains information from a named informant, the affidavit will be sufficient if the information given is sufficiently detailed so as to suggest direct knowledge on the informant's part. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). There are, however, varying degrees of credibility with respect to informants. For instance, where a named informant is a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of that information is inherent. *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex. Crim. App. [Panel Op.] 1982); *Tribble v. State*, 792 S.W.2d 280, 284 (Tex. App.—Houston

6

[1st Dist.] 1990, no writ). The citizen-informer is presumed to speak with the voice of honesty and accuracy. *State v. Duarte*, 389 S.W.3d 349, 356 (Tex. Crim. App. 2012). By contrast, "the criminal snitch who is making a *quid pro quo* trade does not enjoy any such presumption; his motive is entirely self-serving." *Id.*

Appellant contends that the affidavit in this case is based almost entirely on information provided by a first-time informant under arrest with the hope of leniency. However, there is no evidence in the record of a quid pro quo relationship or that an offer of leniency was made to Germany in exchange for the information. The affidavit reflects that when Officer Leland spoke to Germany following her arrest by League City police on a municipal warrant, she told him that she, along with appellant, McMillen, Devlin, and Scott, all used methamphetamine at appellant and McMillen's residence on May 2, 2011. As the State notes, it is illogical to conclude that Germany would implicate herself for possession of methamphetamine—a felony offense punishable by a term of confinement[1]—in the hope of an offer of leniency for an offense punishable only by a fine.[2]

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b)-(f) (West 2010) (governing punishment for possession of penalty 1 controlled substances); *see id.* §481.102(6) (stating methamphetamine is penalty group 1 controlled substance).

[2] *See* TEX. GOV'T CODE ANN. § 29.003(a)(2) (West Supp. 2014) (categorizing offenses arising under municipal ordinances, resolutions, rules, or orders as punishable by fine only).

Appellant also argues that the affidavit is based largely on hearsay because it does not state that Germany saw the events described in the affidavit. However, it is clear from the affidavit that Germany witnessed the events she described to Officer Leland. Germany told Officer Leland that McMillen picked her up, took her to his and appellant's house, provided methamphetamine to her, appellant, Devlin, and Scott, that they all used the drugs, and that she spent the night at the house. It is reasonable to conclude that, as an overnight guest, Germany would know who lived in the house. It is also reasonable to infer that because Germany accepted drugs from McMillen, used them with him and appellant, and witnessed McMillen sell 1/8 ounce of methamphetamine to an unknown female inside the house, that Germany would know where they hid their drugs. *Rodriguez*, 232 S.W.3d at 61 (noting reviewing courts should interpret affidavit in commonsensical and realistic manner, recognizing that magistrate may draw reasonable inferences). Further, Germany's statement that McMillen hid his methamphetamine behind his bed mattress and that appellant hid hers in her white and blue-striped purse are details that reinforce her personal knowledge.

Appellant also complains that the statements in the affidavit are largely uncorroborated. However, the affidavit states that Germany identified appellant in a photograph as the person she knows as the "Vanessa" who was present at the house. The affidavit also states that, on July 22, 2009, Officer Leland participated

8

in the execution of a narcotics search warrant which named McMillen and appellant as the individuals in control of the same residence identified in the present affidavit. The search resulted in the seizure of methamphetamine, and appellant was subsequently charged with manufacture/delivery of methamphetamine. This information corroborates Germany's statement by establishing the officer's knowledge that, at a time previous, the same house had been occupied by the same individuals who had been found in possession of the same illicit drugs as set out in the statement. Further, although appellant was not convicted of the 2009 charge,[3] the information in the affidavit stating that McMillen had at least nine prior criminal convictions including one for possession of a controlled substance and that appellant had six previous drug-related arrests with one conviction, corroborates Germany's statement that McMillen and appellant possessed and sold methamphetamine. Moreover, Germany's admission to possessing methamphetamine was a statement against her own penal interest and, as such, can be used to corroborate the reliability of her information in the affidavit. *See Abercrombie v. State*, 528 S.W.2d 578, 583–85 (Tex. Crim. App. 1974); *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (concluding named informant's credibility reinforced when he admitted to being drug trafficker).

---

[3]    At the hearing on appellant's motion to suppress, defense counsel advised the court that the 2009 charge against appellant was dismissed.

9

Appellant also relies on *Wester v. State*, 109 S.W.3d 824 (Tex. App.—Dallas 2003, no pet.), in support of her argument that the affidavit is insufficient to support a finding of probable cause. Aside from the fact that *Wester* is not binding precedent on this Court, we find it factually distinguishable from the case before us. In *Wester*, the Dallas Court of Appeals held that an affidavit was insufficient to support a search warrant where the informant was "a suspect under arrest for the very drugs he claimed to have purchased from [the defendant] and was being interrogated at the police station when he gave his statement." *Id.* at 827. There, however, the court questioned the extent to which the informant's admission carried the weight of a statement against penal interest because the police had already found the drugs when the informant made his statement. *Id.*; *see Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) ("An admission against penal interest, even by a first-time informant, is a factor indicating reliability."). Here, however, at the time Germany made her statement, there was nothing connecting her with the crime under investigation. Unlike in *Wester*, where the informant was under arrest for possession of the very drugs he claimed to have purchased from the defendant, Germany was arrested on a municipal warrant and not for her suspected involvement with narcotics.

10

*Wester* is also distinguishable from the facts of this case in another respect. In *Wester*, the court emphasized that the information contained in the affidavit was not detailed. *See Wester*, 109 S.W.3d at 827. The court noted,

> the only fact that specifically related to Wester was [the informant]'s statement that he purchased the drugs from Wester at Wester's residence just prior to being stopped. No other independently verifiable facts related to Wester, such as previous drug transactions, the location of the marijuana in the house, or the layout of the house, were alleged.

*Id.* As described above, Germany provided a detailed account of the events on May 2, 2011, including a description of who was present, the drugs provided, who used them, and where McMillen and appellant hid their drugs. Further, the affidavit contains information related to appellant and McMillen's criminal history, thereby providing independently verifiable facts related to appellant's previous drug-related activity.

In sum, the affidavit contained sufficient information for the magistrate to conclude that there existed a fair probability that contraband or other evidence of a crime would be found at appellant's residence at the time the warrant was issued. Consequently, the trial court did not abuse its discretion in denying appellant's motion to suppress evidence obtained as a result of the search warrant. We overrule appellant's sole issue on appeal.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).