PD-0730-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/29/2015 4:20:55 PM
Accepted 7/1/2015 1:20:34 PM
ABEL ACOSTA
CLERK

No. PD-0730-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

DALLAS CARL TATE,                                          Appellant

v.

THE STATE OF TEXAS,                                        Appellee

Appeal from Montague County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

July 1, 2015

ABEL ACOSTA, CLERK

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Dallas Carl Tate.

*The case was tried before the Honorable Jack A. McGaughey, 97th Judicial District Court, Montague County, Texas.

*Counsel for Appellant at trial was Jeannette Richmond, Richmond Law Office, 900 8th Street, Suite 115, Wichita Falls, Texas 76301.

*Counsel for Appellant on appeal was Lynn Switzer, P.O. Box 2040, 406 N. Grand Ave., Suite 108, Gainesville, Texas 76241.

*Counsel for the State at trial was Paige Williams, District Attorney, and Casey Hall, Assistant District Attorney, 97th Judicial District, P.O. Box 55, Montague, Texas 76251.

*Counsel for the State on appeal was Zachary Renfro, Special Prosecutor, 304 Clay St., Nocona, Texas 76255.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Did the court of appeals ignore multiple rules of sufficiency review and substitute its judgment for the jury's when it held there was insufficient evidence connecting appellant to the contraband found in plain view in the center console of a car that he owned and was driving?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

APPENDIX (Opinion of the Court of Appeals, Dissenting Opinion)

# INDEX OF AUTHORITIES

**Cases**

*Abercrombie v. State*, 528 S.W.2d 578 (Tex. Crim. App. 1974) . . . . . . . . . . . . . . . 8

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . 7

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006). . . . . . . . . . . . . . 2, 4, 7, 8

*Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . 5

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson v. State*, 871 S.W.2d 183 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . 7

*Merritt v. State*, 368 S.W.3d 516 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . 7

*Murray v. State*, 457 S.W.3d 446 (Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . 7

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . 6

*Tate v. State*, 02-14-00179-CR, __S.W.3d__, 2015 Tex. App. LEXIS 4941
(Tex. App.–Fort Worth May 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Statutes and Rules**

TEX. CODE CRIM. PROC. art. 38.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. APP. P. 66.3(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

No. PD-0730-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

DALLAS CARL TATE,                                                                          Appellant

v.

THE STATE OF TEXAS,                                                                       Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

**STATEMENT OF THE CASE**

Appellant was convicted of possession of a controlled substance and sentenced to two years in state jail.[1] The court of appeals held that the evidence was legally

---

[1] 4 RR 16.

1

insufficient to connect appellant to the methamphetamine found in his vehicle.

## STATEMENT OF PROCEDURAL HISTORY

On May 14, 2015, the court of appeals reversed appellant's conviction and rendered a judgment of acquittal in a published opinion.[2] Justice Walker wrote a dissenting opinion. No motion for rehearing was filed. After this Court granted an extension, the State's petition is due on June 29, 2015.

## GROUND FOR REVIEW

**Did the court of appeals ignore multiple rules of sufficiency review and substitute its judgment for the jury's when it held there was insufficient evidence connecting appellant to the contraband found in plain view in the center console of a car that he owned and was driving?**

## ARGUMENT AND AUTHORITIES

The so-called "affirmative links" rule protects an innocent bystander from conviction for possession merely because of his fortuitous proximity to someone else's contraband.[3] However, presence or proximity, when combined with other evidence, may well satisfy the State's burden of proof.[4] Shortly after appellant was removed from his vehicle, an officer discovered a syringe of methamphetamine in plain view under the air conditioning controls within reach of the driver's seat. Was

---

[2]    *Tate v. State*, 02-14-00179-CR, __S.W.3d__, 2015 Tex. App. LEXIS 4941 (Tex. App.–Fort Worth May 14, 2015).

[3]    *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006).

[4]    *Id*. at 162.

appellant's proximity to where the syringe was found merely fortuitous?

Facts

Appellant was driving his vehicle when he was stopped by Officer Beckham for outstanding warrants.[5] There was one passenger in the front and one in the back.[6] The passengers remained inside for roughly five minutes after appellant was removed.[7] From where he was standing with appellant, Beckham could see the front passenger moving, but he did not see her reach over towards the area of the air-conditioning controls.[8] He removed the passengers after requesting a unit to transport appellant to jail.[9] He then impounded the vehicle and conducted an inventory pursuant to a written policy.[10] Beckham found a syringe containing .24 grams of methamphetamine in an open compartment underneath the radio and climate controls.[11] It was in plain view and directly to the right of the driver's seat.[12]

---

[5] 3 RR 12-16, 60.

[6] 3 RR 13.

[7] 3 RR 24-25, 28.

[8] 3 RR 27-28, 30-31.

[9] 3 RR 25.

[10] 3 RR 15.

[11] 3 RR 18, 48, 64.

[12] 3 RR 18, 28, 60, 63.

<u>Opinion below</u>

The court of appeals reversed the jury's verdict of guilt. It properly stated the deferential standard of review for sufficiency of the evidence.[13] It cited heavily from *Evans v. State*, the style case for using circumstantial evidence to link a defendant to a controlled substance.[14] It compiled a non-exhaustive list of 16 potential links.[15] Importantly, it reiterated that the number of links is not as important as their "logical force" and the absence of various links is not evidence of innocence to be weighed against the links presented.[16] Unfortunately, it did not follow these rules:

> The dissent argues that the syringe's location "in plain view in an open cubby in the car's console" that was "conveniently accessible to Tate" is sufficient in addition to his vehicle ownership claim to link the syringe to him. . . . Missing from the dissent's logical equation is any evidence that at the time Tate was removed from the car, the syringe was located in the compartment where it was later found. . . . [A]t least five minutes had elapsed before the women were removed from the vehicle, during which time they were moving around so much that [the officer] admitted he could not keep a proper eye on them and could not tell what they were doing.[17]

It concluded:

> [T]here can be no logical inferences from a complete gap in proof—either direct

---

[13]    Slip op. at 4-5 (citing, *inter alia*, *Jackson v. Virginia*, 443 U.S. 307 (1979), and TEX. CODE CRIM. PROC. art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . .").

[14]    Slip op. at 5-7.

[15]    Slip op. at 6-7.

[16]    Slip op. at 6. *See Evans*, 202 S.W.3d at 162.

[17]    Slip op. at 8 (citations omitted).

4

or circumstantial—as to whether the syringe was in that compartment at any point in time when Tate was also present in the vehicle. . . .

 On this record, the only link between Tate and the syringe at the time he was removed from the vehicle was that he was the driver and self-purported owner of the vehicle.[18]

Argument

 The court of appeals ignored basic rules of sufficiency review on its way to acquitting appellant.

*Alternative reasonable hypothesis*

 The court of appeals is correct that, "absent from the record is any evidence that the syringe was not in the possession of [the passengers] when Tate left the vehicle . . . ."[19]  But however reasonable this innocent explanation may be, focusing on the existence of an "outstanding reasonable hypothesis inconsistent with the guilt of the accused" effectively repudiates the jury's role as the exclusive judge of the facts and places the reviewing court in the posture of a "thirteenth juror."[20]

*Joint possession*

 Moreover, a hypothesis based on exclusive possession by either appellant or a passenger ignores the rule that possession need not be exclusive.  "The mere fact that a person other than the accused might have joint possession of the premises does

---

 [18] Slip op. at 10.  Appellant testified that the vehicle, "wasn't in my name, but it did belong to me. . . . I hadn't -- hadn't had any paperwork transferred yet, but it did belong to me."  3 RR 60.

 [19] Slip op. at 8 n.5

 [20] *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991).

not require the State to prove that the defendant had sole possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them."[21]

*Ignoring or re-weighing evidence*

And, in fact, appellant did not jointly possess the vehicle in which the syringe was found. Contrary to the court of appeals's view, appellant is not the "self-purported owner." When viewed in the light most favorable to the verdict, appellant simply *is* the owner.[22] If a qualifier is necessary, he is the "admitted owner."

The court of appeals also failed to acknowledge the presence of links from its list or downplayed their value. Six of the court's links are present: "the contraband was (1) in plain view; (2) conveniently accessible to . . . the accused; (3) in a place owned, rented, possessed, or controlled by the accused; (4) in a car driven by the accused; (7) drug paraphernalia was present; . . . [and] (13) the accused was present when the search was conducted."[23] The court of appeals held that plain view and convenient accessibility mean nothing without direct evidence that the syringe was there when appellant in the vehicle.[24]

---

[21] *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005).

[22] Thus it is assumed the jury disregarded one passenger's statement to Beckham that she owned the vehicle. 3 RR 15.

[23] *See* slip op. at 6-7.

[24] Slip op. at 8.

6

*Absent and circumstantial evidence*

In the court's view, what was missing were fingerprints or evidence that Beckham saw the syringe when appellant was still in the vehicle.[25] This Court has repeatedly warned against focusing on missing evidence.[26] Moreover, circumstantial evidence is as probative as direct evidence and can be sufficient on its own to establish guilt.[27] It is not necessary that every fact, like fingerprints, point directly and independently to the defendant's guilt.[28] And, far from being a prerequisite to conviction, a defendant's presence *vel non* at the time of the search is merely one circumstance to be considered.[29]

Conclusion

Appellant testified that the syringe belonged to one of the passengers and was not in the console when he was in the car.[30] The court of appeals acquitted appellant based on that possibility. However, "The jury presumably went through exactly the

---

[25]   Slip op. at 7 n.3, 8 n.4.

[26]   *See, e.g., Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015); *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012); *Evans*, 202 S.W.3d at 164.

[27]   *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[28]   *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

[29]   *Evans*, 202 S.W.3d at 162 n.12; *see also* slip op. at 7. It might be inferred that the court of appeals defines "presence" as a suspect's immediate proximity to the contraband at the time it is discovered, as it is undisputed that appellant was in the vehicle minutes before the syringe was found.

[30]   3 RR 63-65.

7

same weighing of evidence, credibility assessments, and alternative-explanation exercises and came to the opposite conclusion, *i.e.*, appellant was connected to the drugs. Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations."[31]

From beginning to end, the court's analysis is a vast departure from the usual course of sufficiency review.[32] The dissent is correct: this is a straightforward possession case.[33] Had this search taken place in a house while the owner was gone, appellant's conviction would have been affirmed.[34] The result should be no different here.

---

[31] *Evans*, 202 S.W.3d at 164.

[32] TEX. R. APP. P. 66.3(f).

[33] Dissent at 1 (Walker, J., dissenting).

[34] *See, e.g., Abercrombie v. State*, 528 S.W.2d 578 (Tex. Crim. App. 1974) (op. on rhr'g), in which the lessee, Dean, was absent when the house was searched but Abercrombie and another were present. *Id*. at 586. This Court held, "While Dean was not present at the time of the search, the house was under his control, marihuana was literally everywhere, and he *or someone in the house* had accepted the marihuana brought by [a neighbor] after Dean's conversation with him. We conclude the evidence was sufficient to support the verdict of guilty as to both Dean and Abercrombie." *Id*. at 586-87 (emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review and reverse the decision of the Court of Appeals.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

   /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that according to the WordPerfect word count tool

the applicable portion of this document contains 2,451 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 29th day of June, 2015, the State's

Petition for Discretionary Review was served electronically through the electronic

filing manager or e-mail on the parties below.

Zachary Renfro
Special Prosecutor
304 Clay St.
Nocona, Texas 76255
renfrolawoffice@gmail.com

Paige Williams
District Attorney
P.O. Box 55
Montague, Texas 76251
paige.williams@co.montague.tx.us

Lynn Switzer
P.O. Box 2040
406 N. Grand Ave., Suite 108
Gainesville, Texas 76241
lynn.switzer@thesolawfirm.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

10

**APPENDIX**



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00179-CR

DALLAS CARL TATE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
TRIAL COURT NO. 2013-0163M-CR

----------

## OPINION

----------

## I. Introduction

In one issue, Appellant Dallas Carl Tate challenges the sufficiency of the evidence used to support his conviction for possession of a controlled substance. Specifically, Tate argues that the evidence does not prove that he possessed the syringe containing the controlled substance found near the front-seat air-

conditioning unit of his car during an inventory search. We will reverse the trial court's judgment and render a judgment of acquittal.

## II. Facts

Sergeant Rick Beckham, a detective with the Bowie Police Department, testified that around 2:00 p.m. on December 3, 2012, he pulled Tate over because he believed him to have outstanding warrants. Accompanying Tate were two female passengers—Bonita Proctor and Sherita Yvonne Hale—and a dog.

Tate exited the vehicle upon the officer's request while the women remained in the car. Sergeant Beckham testified that he took Tate to the rear of the vehicle, informed him about the warrants, confirmed the warrants, secured the property Tate had on his person, handcuffed him, contacted dispatch to request transportation, and then placed Tate into custody. After that, Sergeant Beckman testified that he and Tate waited near the rear of the vehicle for a patrol unit to arrive to transport Tate to jail.

From where he was standing during this process, Sergeant Beckham said that he had a clear view of Proctor, the front-seat passenger, and he did not see her reach toward the air conditioning unit or in that general direction. However, he also testified that, because Proctor was moving around a lot and he could not tell exactly what she was doing, he asked both women to step out of the vehicle. According to the officer, the women exited the vehicle approximately five minutes after he had removed Tate from the vehicle.

2

When Bowie Police Officer Mark Robertson and State Trooper Rachel Russell arrived to assist Sergeant Beckham, Sergeant Beckham directed Officer Robertson to transport Tate to jail.  He then reported to Trooper Russell that the female passengers had been moving around a lot in the vehicle and he requested that she search them.[1]  Trooper Russell did so, and found no contraband.

Although the vehicle was not registered in his name and he was unable to provide any paperwork demonstrating his ownership, Tate claimed that he owned the vehicle.  One of the female passengers also claimed ownership of the vehicle; however, she, too, could provide no proof.  Therefore, pursuant to the Bowie Police Department's written impoundment policy, Sergeant Beckham impounded the vehicle.  The vehicle was later inventoried at the scene, at which time Sergeant Beckham discovered a syringe filled with a brown liquid substance—later identified by an expert as 0.24 grams of methamphetamine—located in an open compartment underneath the air conditioner/heater control panel.  Sergeant Beckham described the compartment as "directly to the right" of the driver's seat.  He further testified that while both Tate and Proctor could have

---

[1]Sergeant Beckham testified that by this time he had already requested and obtained permission to search the women's purses and found no contraband.

3

reached out and touched the compartment, he did not believe Hale, the back-seat passenger, could.[2]

At the conclusion of the trial, the jury found Tate guilty of possession of a controlled substance, namely, methamphetamine, in an amount of less than one gram. The trial court sentenced Tate to two years' confinement.

### III. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.

---

[2]Tate disagreed, testifying that Hale could also have accessed the compartment if she had leaned forward between the two seats.

4

Crim. App. 2010).  Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.  *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

### IV.  Analysis

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, which includes methamphetamine.  Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a) (West 2010).  To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance.  *Id.* § 481.002(38) (West 2010 & Supp. 2014); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  The State may prove the elements of possession through direct or circumstantial evidence; however, the evidence must establish that the accused's connection with the substance was more than fortuitous.  *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

If the contraband is not found on the accused's person, independent facts and circumstances may "link" the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed the contraband.

5

*Evans*, 202 S.W.3d at 161–62; *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Links are established by the totality of the circumstances, and no set formula necessitates a finding of a link sufficient to support an inference of knowing possession. *Wright v. State*, 401 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The number of linking factors present is not as important as the "logical force" they create to prove that an offense was committed. *Roberson*, 80 S.W.3d at 735. The absence of various links does not constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Texas courts have identified a non-exhaustive list of links that may, alone or in combination with others, establish a person's knowing possession of contraband, including: whether the contraband was (1) in plain view; (2) conveniently accessible to or found on the same side of the car as the accused; (3) in a place owned, rented, possessed, or controlled by the accused; (4) in a car driven by the accused; or (5) found in an enclosed space; whether (6) the odor of narcotics was present; (7) drug paraphernalia was present, in view of, or found on the accused; (8) the accused's conduct indicated a consciousness of guilt (e.g., furtive gestures, flight, conflicting statements); (9) the accused had a special relationship to the drug; (10) the accused possessed other contraband or narcotics when arrested; (11) the accused was under the influence of narcotics

6

when arrested; (12) affirmative statements connected the accused to the drug; (13) the accused was present when the search was conducted and whether others were present at the time of the search; (14) the accused was found with a large amount of cash; (15) the amount of contraband found was large enough to indicate that the accused knew of its existence; and (16) the accused's relationship to other persons with access to where the drugs were found. *Evans*, 202 S.W.3d at 162, n.12; *Roberson*, 80 S.W.3d at 735, n.2; *Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). These are simply some factors that may circumstantially establish the sufficiency of the evidence to prove a knowing "possession," but they are not a litmus test. *Evans*, 202 S.W.3d at 162, n.12. Each case must be examined on its own facts. *Roberson*, 80 S.W.3d at 736.

Because the syringe containing the methamphetamine was not found on Tate's person, linking factors must be present, sufficient to create a "logical force" to prove that Tate committed the offense. *See id.* at 735. On the record of this case, the only link between Tate and the syringe was that Tate was the driver and purported owner of the vehicle in which the syringe was found in a location that would have been conveniently accessible to both Tate and Proctor.[3] This, without more, is insufficient to support Tate's conviction. *See id.* at 736. ("[A]ppellant's status as the driver of the car is insufficient on its own to prove

---

[3]The syringe was not fingerprinted.

possession, but may help show legal sufficiency if combined with other evidence.")

The dissent argues that the syringe's location "in plain view in an open cubby in the car's console"[4] that was "conveniently accessible to Tate" is sufficient in addition to his vehicle ownership claim to link the syringe to him. However, in order to constitute a link, the evidence must logically connect the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed it. *Evans*, 202 S.W.3d at 161–62; *Roberson*, 80 S.W.3d at 735. Missing from the dissent's logical equation is any evidence that at the time Tate was removed from the car, the syringe was located in the compartment where it was later found. Although it was found in plain view after Proctor and Hale exited the vehicle, looking at the evidence in the light most favorable to the verdict, at least five minutes had elapsed before the women were removed from the vehicle, during which time they were moving around so much that Sergeant Beckham admitted he could not keep a proper eye on them and could not tell what they were doing.[5]

---

[4]There is no evidence that Sergeant Beckham saw the syringe from his vantage point when he first approached the vehicle or after removing Tate to the rear of the vehicle, all of which occurred during daylight hours.

[5]Also absent from the record is any evidence that the syringe was not in the possession of Proctor or Hale when Tate left the vehicle, which would have supported a logical inference that the syringe was in the compartment prior to Tate's removal from the vehicle. Although Sergeant Beckham testified that he searched their purses, there is no evidence indicating when he performed that search, except that it occurred prior to Russell's search, nor can the time be

8

The place where officers found the syringe was within reach of both Tate and Proctor. Although found in plain view at the time of inventory, there is no evidence that the syringe was in plain view or accessible to Tate at any time when Tate was inside the vehicle.[6]

The facts of this case bear a striking resemblance to the facts presented in *Roberson*, in which the court held that evidence is not legally sufficient when the State merely shows that a defendant was driving a vehicle containing narcotics. 80 S.W.3d at 736. In that case, Roberson was the driver of a vehicle containing two other passengers and 24 grams of cocaine. *Id.* at 741. The police discovered the drugs in the vehicle near where one of the passengers was seated, and upon arrest, Roberson reportedly displayed a "consciousness of guilt." *Id.* Nothing else linked Roberson to the cocaine—he was not under the influence at the time of arrest; there was no drug odor in the car; he was cooperative and made no furtive gestures; the cocaine was not found until almost

---

inferred from other facts in the record, since Sergeant Beckham's testimony on that point was not presented in the context of a sequential or chronological recitation of the events as they transpired. Without that context, or any testimony as to when in the series of events the search of purses occurred, logic will not permit an inference that because he searched their purses, he did so at any particular point in the sequence.

[6]And, contrary to what the dissent considers a reasonable inference, Tate's testimony with regard to what he probably would have done if he had known about the syringe is purely speculative and does not constitute evidence to link Tate to the syringe. *See Hernandez v. State*, 867 S.W.2d 900, 904 (Tex. App.—Texarkana 1993, no pet.) ("Evidence affirmatively connecting the accused to the contraband must amount to more than mere conjecture or speculation.")

9

twenty minutes had passed, during which time the two passengers remained in the vehicle; and no statements were made at the scene regarding the cocaine. *Id.* at 742. This evidence, the court held, even in the light most favorable to the verdict, "d[id] not create the logical force necessary to allow a rational juror to find, beyond a reasonable doubt, that [Roberson] had knowledge of the presence of cocaine." *Id.*

Although we are required to resolve any conflicting inferences in favor of the verdict, there can be no logical inferences from a complete gap in proof—either direct or circumstantial—as to whether the syringe was in that compartment at any point in time when Tate was also present in the vehicle. There is no evidence in this record that the syringe was ever in plain view or accessible to Tate.

On this record, the only link between Tate and the syringe at the time he was removed from the vehicle was that he was the driver and self-purported owner of the vehicle.[7] Therefore, a rational juror could not have determined

---

[7]We reject the dissent's contention that Tate's act of having his driver's license and proof of insurance out and ready when Officer Beckham approached the vehicle is another link to or any evidence of possession because this behavior is equally consistent with being a conscientious and law-abiding driver. *Cf. Bland v. State*, No. 01-13-00303-CR, 2014 WL 4855024, at *3 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, no pet.) (mem. op., not designated for publication) (stating that consciousness of guilt may be shown by flight, excessive nervous behavior, or an unsettled demeanor); *Wallace v. State*, No. 02-10-00196-CR, 2011 WL 4415024, at *2 (Tex. App.—Fort Worth Sept. 22, 2011, no pet.) (mem. op., not designated for publication) (stating that one of the links between appellant and the 6.36 grams of cocaine found in the driver's side

10

beyond a reasonable doubt from the evidence that Tate intentionally or knowingly exercised care, custody, management, or control over the syringe such as to constitute "possession" of the methamphetamine that was later found inside the vehicle.[8]  Because we so hold, we sustain Tate's sole point.

## IV. Conclusion

Because the evidence is insufficient to support Tate's guilt, we reverse the trial court's judgment and render a judgment of acquittal.  *See* Tex. R. App. P. 43.2(c), 51.2(d); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S. Ct. 2151, 2154–55 (1978); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S. Ct. 2141, 2150–51 (1978); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013).

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  GARDNER, WALKER, and SUDDERTH, JJ.

WALKER, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  May 14, 2015

---

door pocket of his vehicle was his making furtive gestures when the officer asked for his driver's license and proof of insurance).

[8]In conducting the sufficiency analysis, we do not focus "on [our] own view of what was not proved," as the dissent suggests.  Rather, we hold that, considering all of the evidence in this record, when viewed in the light most favorable to the verdict, the evidence simply does not constitute a "logical force" sufficient to prove possession by Tate.

11



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00179-CR

DALLAS CARL TATE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
TRIAL COURT NO. 2013-0163M-CR

----------

## DISSENTING OPINION

----------

This is a straightforward possession case requiring a straightforward sufficiency analysis under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), which the majority fails to perform. Because the majority's analysis focuses on the links not proven by the State instead of on the links that were proven by the State; substitutes the majority's own weight- and credibility-of-the-evidence determinations for those of the jury; fails to view the evidence in the

light most favorable to the judgment; and disregards controlling, well-established precedent from the Texas Court of Criminal Appeals concerning what evidence will sufficiently link a defendant to contraband found in a vehicle, I am compelled to dissent.

The lynchpin of the majority's reverse-and-acquit sufficiency analysis is the absence of evidence that Officer Beckham observed the syringe of methamphetamine in the cubbyhole[1] in the front console of the car when he approached the driver's-side door of the car after he had stopped Tate. From the absence of this evidence, the majority extrapolates that the syringe of methamphetamine must not have actually been located in the cubbyhole when Tate was stopped and instead must have been placed there by one of the female passengers[2] during an approximately five-minute interval after Tate was asked to step out of the car and before the women were asked to step out of the car. The errors in this analysis by the majority are threefold.

First, instead of analyzing the links that were proven by the State, the majority focuses on its own view of what was not proven. This type of sufficiency analysis in possession cases has been expressly disavowed by the Texas Court

---

[1]Officer Beckham testified that he found the syringe in "the cubbyhole underneath the air conditioner, heater controls in that vehicle."

[2]The two female passengers were friends of Tate's. Bonita Proctor, the front-seat passenger, was Tate's former girlfriend; Sherita Yvonne Hale, the back-seat passenger, was a friend of Proctor's. The trio was on the way to Proctor's house at the time of the stop.

of Criminal Appeals. *Compare Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (explaining that court of appeals's sufficiency analysis erroneously discussed links that might have connected the defendant to the drugs but did not exist in the case and disregarded the links that were proven by the State), *with Tate v. State*, No. 02-14-00179-CR, slip op. at 8–9 (Tex. App.—Fort Worth May 14, 2015, no pet. h.) (conducting sufficiency analysis by discussing links that might have connected Tate to the drugs but did not exist in the case and disregarding the links that were proven by the State—"there is no evidence that the syringe was in plain view or accessible to Tate"; "[a]lso absent from the record is any evidence that the syringe was not in the possession of Proctor or Hale"; "there is no evidence indicating when he [Officer Beckham] performed that search [of the purses]"; "[t]here is no evidence that Sergeant Beckham saw the syringe from his vantage point when he first approached the vehicle"; etc.); *see also Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (explaining that in light of court of criminal appeals's abandonment of "outstanding reasonable hypothesis methodology" in 1991, defendant's link to drugs he allegedly possessed "need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt").

Second, although reciting the proper standard of review, the majority fails to apply it; the majority fails to view the evidence in the light most favorable to the jury's verdict and instead substitutes its own weight and credibility determinations of the evidence for that of the jury. *See Isassi v. State*, 330 S.W.3d 633, 638

3

(Tex. Crim. App. 2010) (reversing court of appeals's judgment of acquittal because court of appeals's sufficiency analysis did not view the evidence in the light most favorable to the jury's verdict or give deference to the jury's weight- and credibility-of-the-evidence determinations). For example, the majority fails to mention that Tate testified that he had his driver's license and proof of insurance out and ready when Officer Beckham approached the driver's-side window of the car. Tate also testified that Officer Beckham's first words to Tate were, "Step out of the vehicle."[3] A reasonable inference exists that the syringe of methamphetamine was in the cubbyhole at the time Officer Beckham stopped Tate for outstanding warrants but that Officer Beckham did not notice it during the extremely short time he stood near the driver's-side window before he asked Tate to get out of the car and escorted Tate to a position at the rear of the vehicle. Also, the syringe of methamphetamine was admitted into evidence. The jury was free to infer from viewing the syringe that it was small enough that it could roll deep enough within the cubbyhole that it would not be visible to a person standing at the driver's-side window. Only Tate testified that it would be

---

[3]On direct examination Tate testified:

Q. And did the officer speak to you when he arrived at your vehicle?

A. Yes. I think I already had my license and insurance ready. He walked up and immediately asked me to step out of the car.

4

visible; the jury was free to not believe his testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988).

Even more importantly, the jury rejected the very same view of the evidence that the majority accepts. At trial, Tate put forward his theory that one of the female passengers must have placed the syringe in the cubbyhole after he had exited the vehicle. Tate testified that the syringe could not have been in the cubbyhole when Officer Beckham stopped him because if it had been there, he (Tate) would have gotten rid of it. Tate testified:

> Q. Okay. Now, Mr. Tate, when you were removed from the car, were you aware that there was a syringe in your car?
>
> A. No, ma'am.
>
> Q. If you had a syringe, what would your actions have been when you knew the police officer was pulling you over?
>
> A. If I had had one?
>
> Q. Yes, sir.
>
> A. I'm not sure. I probably would have thrown it out or, at least, squirted the contents out of it. I don't know. I wouldn't -- I would hate to answer that without being put in that position.
>
> Q. So what you're saying is, you basically would not have left it in a center compartment open to plain view if you had had it?
>
> A. Absolutely not.

Tate testified that he had learned about the syringe of methamphetamine found in his car after he was placed in jail. He said that he wondered to himself which of the female passengers had placed it there.

5

On cross-examination, the prosecutor undermined Tate's theory by questioning why Tate—who admitted he had a prior conviction for possession—would dispose of the syringe if he had known about it, but Tate's two female friends—whom Tate testified also had prior possession convictions—would not have disposed of the syringe but would instead have set him up. Tate testified on cross-examination:

Q. And you said you were not aware of a syringe. You would have thrown it out or squirted its contents if you had been aware of it?

A. Yes, ma'am.

Q. You would have hidden it from police?

A. Hidden the syringe?

Q. Yes.

A. I wouldn't say hide it. I just didn't want it -- wouldn't have it -- wouldn't have had it on me.

Q. So you would have planted it on someone else?

A. Oh, no.

Q. No? You would have gotten rid of the evidence so you wouldn't
 --

A. True.

Q. -- have been charged; is that correct?

A. Correct.

Q. So what you're claiming is, even though you would have thrown the syringe somewhere or squirted the contents out or put it somewhere where it couldn't easily be seen, you're saying that the other two women would have put it somewhere where it could have

6

easily been seen instead of doing the same thing [that you would have done]; is that right?

Officer Beckham testified that after the stop, the women consented to a search of their purses; he searched the purses and found no contraband. The jury could have reasonably inferred that the women would not carry a syringe with a needle on their person or in their pockets and that because the syringe was not found in the women's purses, it was in the cubbyhole all along. In short, the majority's analysis fails to apply the proper *Jackson v. Virginia* standard of review; the majority's analysis does not view the evidence in the light most favorable to the jury's verdict and does not defer to the jury's weight- and credibility-of-the-evidence determinations. *See Evans*, 202 S.W.3d at 164.[4]

Third, the law is well-settled that links like the links that were proven by the State in this case are sufficient to meet the State's burden of establishing that Tate exercised actual care, custody, control, or management over the syringe of methamphetamine and knew that the syringe contained methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014) (setting forth

---

[4]The court of criminal appeals in *Evans* reversed the court of appeals's judgment of acquittal in a possession case because:

> The jury presumably went through exactly the same weighing of evidence, credibility assessments, and alternative-explanation exercises [as that set forth in the court of appeals's opinion] and came to the opposite conclusion, *i.e.*, appellant *was* connected to the drugs. . . . Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations.

202 S.W.3d at 164.

definition of possession). Viewed in the light most favorable to the jury's verdict, the evidence establishes that the syringe of methamphetamine was found in plain view in an open cubbyhole in the car's console, was conveniently accessible[5] to Tate—even Tate testified that the cubbyhole was accessible to the driver of the car, was found in a car that Tate claimed to own, and was found in a car driven by Tate. *See Evans*, 202 S.W.3d at 162 n.12 (listing these possible links); *Roberson v. State*, 80 S.W.3d 730, 735 n.2 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (same); *Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (same). Viewed in the light most favorable to the jury's verdict, the evidence also establishes that about five minutes after Tate was asked to step out of the vehicle, the female passengers were asked to step out of the vehicle; that before the female passengers were asked to step out of the vehicle, their purses were searched and found to contain no contraband; that the female passengers themselves were subsequently searched by Trooper Rachel Russell when she arrived and that no contraband was found; and that although the front-seat passenger was moving around a lot

---

[5]The term "conveniently accessible" means that the contraband must be within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it. *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

in the car before she was asked to step out of the vehicle,[6] Officer Beckham did not observe her reach forward toward the front console near the cubbyhole. Thus, a reasonable inference exists that one of the female passengers did not remove the syringe of methamphetamine from her purse or off of her person and place it in the cubbyhole and that the syringe was in the cubbyhole all along.

Tate himself provided testimony allowing the jury to reasonably infer that, even if one of the women had possessed the syringe of methamphetamine, she would have hidden it or ejected its contents, not placed it in plain view in the car. The logical force of the combined evidence and reasonable inferences therefrom—when viewed in its totality in the light most favorable to the verdict and with deference to the jury's weight- and credibility-of-the-evidence determinations—is sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Tate exercised actual care, custody, control, or management of the syringe of methamphetamine and that his relationship to it was more than merely fortuitous.[7] *See* Tex. Health & Safety Code Ann.

---

[6]Proctor, the front-seat passenger, did not testify, so no direct explanation exists in the record for her movement within the car; however, Officer Beckham testified that there was a dog in the car with the trio.

[7]I cannot agree with the majority's assertion that the facts here bear a striking resemblance to the facts in *Roberson*, 80 S.W.3d at 741–42. In *Roberson*, the drugs were not found in an area of the car conveniently accessible to the defendant-driver, like the syringe was conveniently accessible to Tate as the driver of the car. *Id.* (explaining that a "full cookie" of crack cocaine was found on the passenger side floorboard near the door and that a "half cookie" of crack cocaine was found on the roadway a few inches from the car on the passenger side). Additionally, in *Roberson*, evidence existed linking only the

9

§ 481.002(38); *see also, e.g., Evans*, 202 S.W.3d at 163 (reversing acquittal judgment and noting that evidence—sixteen grams of cocaine was located on coffee table one foot directly in front of where defendant was sitting—constituted "two extremely strong 'presence' and 'proximity' links"); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981) (holding evidence sufficient to support driver's possession conviction based on baggie of marijuana found in defendant's car in plain view on floor between driver's seat and car door despite evidence that defendant's car was used by a business as a delivery car).[8]

front-seat passenger to the cocaine, not the defendant-driver; while here, evidence exists linking only Tate to the syringe of methamphetamine, not the front-seat passenger. *See id.* (explaining that the evidence linked the front-seat passenger to the cocaine because the front-seat passenger appeared to be under the influence of drugs, was sitting where the "full cookie" of cocaine was found, and had exited the vehicle near where the "half cookie" of cocaine was found, and the driver never went to the passenger side of the exterior of the vehicle during the stop and appeared sober).

[8]The legal analysis concerning the sufficiency of the evidence to establish that a driver, driving a car he claims to own, exercised actual care, custody, control, or management over contraband found in his car in a location that is easily accessible to the driver coupled with other circumstantial evidence is so well-established that many cases on this issue are not published. *See, e.g., Otto v. State*, No. 08-04-00249-CR, 2005 WL 1940276, at *5 (Tex. App.—El Paso Aug. 11, 2005, no pet.) (not designated for publication) (holding evidence legally sufficient to support driver's possession conviction based on evidence that he told officer he was the owner of the vehicle and that inventory search revealed contraband underneath plastic molding of gear shift console—a location in close proximity to and easily accessible by driver; court focused on the degree to which this evidence linked driver to contraband and declined to focus on the number of links or the lack of additional links, such as the absence of furtive gestures, incriminating statements, drug paraphernalia, fingerprints, weapons, or drugs found on driver's person or that passenger had access to vehicle); *McClanahan v. State*, No. 05-03-00115-CR, 2003 WL 22663801, at *2 (Tex. App.—Dallas Nov. 12, 2003, pet. ref'd) (not designated for publication) (holding evidence

10

For all of these reasons, I respectfully dissent.  I would affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED:  May 14, 2015

---

sufficient to support driver's possession conviction based on baggie of cocaine found in defendant's car on driver's seat although two passengers were in the car); *Fowler v. State*, No. 08-01-00409-CR, 2002 WL 1732598, at *3 (Tex. App.––El Paso July 25, 2002, no pet.) (not designated for publication) (holding evidence sufficient to support driver's possession conviction based on marihuana found in cupholder in center console of defendant's car although front-seat passenger was in the car); *see also Parra v. State*, No. 03-04-00643-CR, 2006 WL 1649029, at *4–5 (Tex. App.—Austin June 15, 2006, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support driver's conviction because the jury, as the exclusive judge of the credibility of the witnesses, was entitled to believe officer's testimony that he was watching the passengers who remained in the car after appellant was arrested and placed in patrol car and that officer would have seen any attempt by the passengers to stash the drugs in the manner and location where they were found).